UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICHARD R.,[1]

        Plaintiff,

    v.                                  6:23-CV-6346-LJV
                                              DECISION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

On June 23, 2023, the plaintiff, Richard R. ("Richard"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On September 15, 2023, Richard moved for judgment on the pleadings, Docket Item 6-1; on October 12, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 7-1; and on October 26, 2023, Richard replied, Docket Item 8.

_____

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Richard applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court denies Richard's motion and grants the Commissioner's cross-motion.[3]

## <u>STANDARD OF REVIEW</u>

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld.").

But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal

principles, application of the substantial evidence standard to uphold a finding of no

disability creates an unacceptable risk that a claimant will be deprived of the right to

have her disability determination made according to the correct legal principles."

*Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.    THE ALJ'S DECISION

The ALJ found that Richard had not been under a disability from November 11,

2020, through September 26, 2022, the date of her decision.  *See* Docket Item 5 at 36.

The ALJ's decision was based on the five-step sequential evaluation process under 20

C.F.R. §§ 404.1520(a), and 416.920(a).  *See id.* at 23-24.

At step one, the ALJ found that Richard "ha[d] not engaged in substantial gainful

activity since November 11, 2020, the alleged onset date."  *Id.* at 24.  At step two, the

ALJ found that Richard suffered from two severe, medically determinable impairments:

"unspecified attention deficit hyperactivity disorder ('ADHD'), and cannabis use

disorder."  *Id.* at 25.

At step three, the ALJ found that Richard's severe, medically determinable

impairments did not meet or medically equal one of the listed impairments in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  *See id.* at 27-28.  More specifically, the ALJ found

that Richard's mental impairments did not meet or medically equal listing 12.11

(neurodevelopmental disorders).  *Id.* at 27.  In assessing Richard's mental impairments,

the ALJ found that Richard was: (1) mildly impaired in understanding, remembering, or

3

applying information; (2) moderately impaired in interacting with others; (3) mildly

impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired

in adapting or managing himself.  *Id.* at 27-28.

The ALJ then found that Richard had the residual functional capacity ("RFC")[4] to

"perform a full range of work at all exertional levels" except that:

> [Richard] can occasionally interact with supervisors and coworkers,
> and he can never interact with the public.  [He] cannot work in
> tandem with others.  [He] can perform work in a routine setting
> where the changes to work processes are no more than occasional
> or are gradually introduced, and where there are no strict
> production quotas or assembly-line pace work.

*Id.* at 28.

At step four, the ALJ found that Richard no longer could perform any past

relevant work.  *Id.* at 34.  But given Richard's age, education, and RFC, the ALJ found

at step five that he could perform substantial gainful activity as a marker, routing clerk,

or collator operator.  *Id.* at 34-35; *see Dictionary of Occupational Titles* 209.587-034,

1991 WL 671802 (Jan. 1, 2016); *id.* at 222.687-022, 1991 WL 672133 (Jan. 1, 2016); *id.*

at 208.685-010, 1991 WL 671753 (Jan. 1, 2016).  Therefore, the ALJ found that Richard

had not been under a disability from November 11, 2020, through September 26, 2022.

*See* Docket Item 5 at 36.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her
limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-
8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8
hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v.
Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

## II.    ALLEGATIONS

Richard argues that the ALJ erred in two ways.  Docket Item 6-1 at 7-12.  First, he argues that the ALJ erred in formulating an RFC based on her own lay judgment because there was no medical opinion in the record.  *Id.* at 7-10.  Second, he argues that "the record does not actually contain evidence of the 'due process' the state agency reviewing consultants supposedly cited" in connection with Richard's failure to attend a scheduled examination.  *Id.* at 11.  For the reasons that follow, this Court disagrees.

## III.    ANALYSIS

### A.  ALJ'S RFC DETERMINATION ABSENT A MEDICAL OPINION

Richard first argues that the ALJ erred in determining his RFC "with no functional medical opinion evidence in the file."  *Id.* at 7.  But courts repeatedly have held that the RFC need not "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order).  Stated another way, an ALJ need not base an RFC on a formal medical opinion when the record "otherwise contains a useful assessment of a claimant's functional abilities from a medical source."  *Gulczewski v. Comm'r of Soc. Sec.*, 464 F. Supp.3d 490, 497 (W.D.N.Y. 2020).  And here, there was ample evidence upon which the ALJ based the RFC.

On February 6, 2021, Richard completed a disability function report, noting that he takes care of his son, prepares meals daily, does laundry, and shops every week.  Docket Item 5 at 313-19.  He reported being able to get around by walking, riding a bicycle, or using public transportation, *id.* at 316, and he said that he could follow written

and spoken instructions, *id.* at 318.  He also reported getting along well with authority figures, and he said that he had never lost a job because of problems getting along with anyone.  *Id.*  Richard said that he handles stress "alright [sic]" but "hate[s] change" because it "makes [him] mad."  *Id.* at 319.

At the hearing, when asked how much he can lift and carry, Richard stated that he can "force [him]self to push almost [forty] pounds on [his] back."  *Id.* at 62.  Richard reported that his only treatment for any physical issues was "taking ibuprofen when [his] back hurts."  *Id.* at 54.  The ALJ asked Richard whether he took any medication for his mental health impairments, and Richard responded that he does not "believe in the medications."  *Id.*

When a claimant has only minor impairments, "an ALJ permissibly can render a common[]sense judgment about functional capacity even without a physician's assessment."  *Perkins v. Berryhill,* 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) (internal citations omitted).  Moreover, "an ALJ is entitled to consider a plaintiff's activities of daily living" as long as there is "a logical connection between the purported activities and the ALJ's discussion and determination."  *Malia Ann B. v. Comm'r of Soc. Sec.,* 2023 WL 2838054, at *11 (N.D.N.Y. Feb. 23, 2023) *report and recommendation adopted*, 2023 WL 2623864 (N.D.N.Y. Mar. 24, 2023).  Here, the ALJ properly relied on Richard's function report, his hearing testimony, and his history of conservative and routine treatment to formulate his RFC.  *Voght v. Saul,* 2020 WL 3410837, at *5 (W.D.N.Y. June 19, 2020) (finding remand was not required where the ALJ did not request a medical opinion, instead relying on the claimant's testimony); *McGonagle v. Kijakazi,* 2022 WL 17724696, at *1 (2d Cir. Dec. 16, 2022) (activities of daily living such

as prepping simple meals, driving, playing video games, attending medical appointments, using public transportation, getting along with providers and staff, spending time with family and friends, did not support a finding of serious and persistent mental disorders).

For example, the ALJ noted that Richard "reported and testified to the independent ability to engage in personal hygiene, prepare meals, engage in household chores, including carrying the laundry, socialize, shop in stores, handle finances, watch television, care for his son when having custody and pets, take public transportation and play video games."  Docket Item 5 at 30-31 (citing *id.* at 50-70, 309-320). The ALJ reasoned that those "activities of daily living require significant physical and mental demands, which are not consistent with the level of limitation [that Richard] alleges," and she therefore concluded that Richard's "activities of daily living suggest a greater degree of functional capability than claimed."  *Id.* at 31.  Those observations and conclusions were well supported by Richard's own reports and testimony.

The ALJ also addressed Richard's reports about his mental and emotional limitations.  For example, she accommodated Richard's report that he dislikes change, *see id.* at 319, by limiting him to "work in a routine setting where the changes to work processes are no more than occasional or are gradually introduced, and where there are no strict production quotas or assembly-line pace work," *id.* at 28.  Likewise, the ALJ addressed Richard's testimony that he has difficulty interacting with people and co-workers, *see id*. at 65-68, by limiting him to only occasional interaction with supervisors and coworkers, no interaction with the public, and no work "in tandem with others."  *Id.*

So the ALJ took into account any challenges Richard might have and addressed those challenges with limitations in the RFC.

The medical records also provided ample support for the ALJ's findings. For example, a behavioral health examination at Spectrum Health Services, dated October 21, 2021, noted that Richard was able to focus, had intact thought process and memory, showed coherent thought content, and behaved appropriately. *Id.* at 850. Likewise, Richard's previous mental status exam from Spectrum Health Services, dated July 10, 2020, opined that he had no problems with abstract thinking, reasoning, or fund of information, and that his ability to make interpretations that lead to relevant and logical conclusions and to identify the existence of problems was "fair." *Id.* at 538. And that fact that Richard did not take medicine for his mental health problems and engaged in only conservative treatment provided even more support for the RFC. *See Salvaggio v. Apfel,* 23 F. App'x 49, 51 (2d Cir. 2001) ("[T]he result of the plaintiff's choice to seek only minimal medical attention of her symptoms . . . supports the finding that plaintiff was not under a disability."); *Penfield v. Colvin,* 563 F. App'x 839, 840 (2d Cir. 2014) (claimant receiving only conservative treatment is evidence that can weigh against allegations of disabling symptoms).

Richard also argues that the ALJ erred by failing to provide a "function-by-function analysis of how she arrived at the specific limitations she included within the RFC." *See* Docket Item 6-1 at 8. But as the Second Circuit has found, "remand is not necessary merely because an explicit function-by-function analysis was not performed." *Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013).

In sum, the ALJ based the RFC on Richard's own reports and testimony as well as on the medical evidence in the record. No opinion evidence was required, nor was the ALJ obliged to perform a function-by-function analysis. Especially because it was Richard's burden to offer medical evidence demonstrating his disability, *see* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."), his argument that the RFC was unsupported lacks merit.[5]

## B. DUE PROCESS AND THE DUTY TO DEVELOP THE RECORD

But even if all that were not true—even if a medical examination and opinion were needed to formulate the RFC here—Richard's argument still would ring hollow. There was no examination or opinion in the record in part because Richard missed his scheduled consultative exam. What is more, his attorney had plenty of time to reschedule that exam, and his attorney did not raise this argument at the hearing—or

---

[5] Richard's argument that "similar" to *Antoniou v. Astrue,* 2011 WL 4529657, at 16-17 (E.D.N.Y. Sept. 27, 2011), "meaningful review is precluded because there is no explanation from the ALJ as to why she elected to decide this case with a lack of opinion evidence" is misplaced. Docket Item 6-1 at 10. In *Antoniou,* remand was necessary because the ALJ refused to allow the plaintiff to reschedule a consultative examination. 2011 WL 4529657, at *18. Indeed, the reviewing court specifically noted that "this is [not] a case where plaintiff refused to cooperate or attend the examinations." 2011 WL 4529657, at *17. Here, on the other hand, and as more fully developed below, Richard did not attend his consultative examination, had plenty of time to reschedule, but never asked the ALJ to allow him to do that. Docket Item 5 at 330. Indeed, his attorney—from the same firm that now represents him, *id.* at 123-26—did not raise this issue until now, Docket Item 6-1 at 9. So contrary to Richard's assertion, *Antoniou* is inapposite. *See Walker v. Barnhart,* 172 F. App'x 423, 426-28 (3d Cir. 2006) (noting that plaintiff missed rescheduled consultative examinations and repeatedly failed to cooperate with the SSA's scheduling attempts with no indication of better future compliance).

indeed, until now.  So even if there were an argument to be raised in this regard, Richard waived it.

As Richard apparently concedes, he failed to attend a scheduled consultative examination in the spring of 2021.  *See* Docket Item 6-1 at 4, 9 (Richard's memorandum of law noting that exam was scheduled but did not take place and that "the ALJ never inquired of [Richard] as to the reasons why he missed the appointments"); *id*. at 10 ("At the hearing, the ALJ did not ask [Richard] why he failed to attend consulting exams and did not even mention the issue.").  Richard seems to fault the ALJ for not attempting to reschedule the exam or inquire about the issue at the hearing.  *Id*. at 9-10 (faulting ALJ for "hold[ing Richard's] failure to attend consulting examinations against him without attempting to reschedule" and for "not even mention[ing] the issue" at the hearing).

But as Richard also notes, he has been represented by the same law firm since long before any "consulting exams were to be scheduled."  *Id*. at 11.  So Richard's attorney knew very well that there was no consultative medical examination and no medical opinion in the record, but he did not raise that issue with the ALJ.  And counsel cannot let an issue like that pass, see what the result of the hearing is, and then raise the issue when the decision turns out to be adverse.  *Cf. Dejesus Gonzalez v. Comm'r of Soc. Sec.,* 2017 WL 1051119, at *4 (W.D.N.Y. Mar. 19, 2019) (finding it "ironic that the same law firm that represented plaintiff at the hearing is accusing the ALJ of failing to obtain records when counsel at the hearing never alerted the ALJ to any gaps in the record").  That is the very definition of sandbagging.  *Bonilla-Bukhari v. Berryhill,* 357 F. Supp.3d 341, 352 (S.D.N.Y. 2019) ("Regularly permitting unsuccessful claimants to raise Appointments Clause challenges for the first time on judicial review, especially

when the arguments underlying those challenges were available at the administrative level, would 'encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later–if the outcome is unfavorable–claiming that the course followed was reversible error.") (citing *Freytag v. Comm'r of Internal Revenue,* 501 U.S. 868, 895, 111 S. Ct. 2631 (1991) (Scalia, J., concurring in part and concurring in the judgment).

Richard complains that even though "[t]he initial disability determination explanations note that a consulting examination was 'required' to determine the claim," at some point "the agency somehow determined that a consulting examination was no longer required."  Docket Item 6-1 at 4.  Again, however, Richard's counsel never raised that issue before the ALJ either in the pre-hearing brief, *see* Docket Item 5 at 402-05, or in person at the hearing, *see id*. at 44-76.  On the contrary, when counsel and the ALJ discussed certain missing records, counsel said nothing about the absence of any exam or opinion and agreed that the record was "otherwise complete."  *See id*. at 48.  So allowing counsel to raise that issue now after already taking a bite of the apple without raising it would be fundamentally unfair.  *Iris R. v. Saul,* 2020 WL 2475824, at *7 (N.D.N.Y. May 13, 2020) ("Indeed, regularly permitting unsuccessful claimants to raise such challenges for the first time on judicial review would 'encourage the practice of 'sandbagging,' permitting a claimant a second bite at the apple when she receives an unfavorable ruling before the SSA on the merits of her petition.").

Moreover, "[c]ourts in this Circuit have held that where a claimant fails to appear at a scheduled consultative examination without explanation, the ALJ has no further duty to develop the record."  *Perelli v. Comm'r of Soc. Sec.,* 2020 WL 2836786, at *5 (E.D.N.Y.

June 1, 2020) (internal citations omitted). In light of Richard's "apparent lack of cooperation with regard to the development of the record, [he] cannot now prevail based upon a challenge to the adequacy of th[e] record."  *Kratochvil v. Comm'r of Soc. Sec.,* 2009 WL 1405226, at *5 (N.D.N.Y. May 18, 2009); *Verge v. Saul,* 2020 WL 5530377, at *4 (W.D.N.Y. Sep. 15, 2020) ("[p]laintiff's argument is without merit because the [p]laintiff failed to cooperate with the disability process by failing to attend any of the three scheduled consultative psychiatric evaluations despite both [p]laintiff and her attorney receiving notices that complied with the relevant regulations").  And that is especially so because the missed consultative examination was scheduled for June 17, 2021, almost a year before the May 2022 hearing and therefore giving counsel more than enough time to reschedule.  *See* Docket Item 5 at 32, 330.

Finally, Richard complains that there is no "evidence of the 'due process'" that reviewing "consultants supposedly [sic] cited" when they found that he had not met his burden of showing that he was disabled.  *See* Docket Item 6-1 at 11.  More specifically, he suggests that he was not given enough notice of his scheduled consulting exam, *id.* (citing "a one-page 'Report of Contact' indicating that someone from the agency left a voicemail message on [his] caseworker's phone, giving the caseworker one business day to respond"), and that he may even have been incarcerated when the exam was scheduled, *id.* at 4 (apparently admitting that he "did not appear for consulting examinations" but noting "that the dates of these determinations appear to coincide with [his] dates of incarceration").  And he says that because he was represented by counsel at that time, his law firm should have been sent notice of the exam that he missed.  *Id.* at 11-12.

All that may well be correct.  But Richard's counsel knew or should have known all that at the time of his hearing and did nothing about it.  Indeed, counsel cites consultations where physicians who reviewed the records found that Richard's claim was insufficient because he failed to attend a scheduled exam after having been provided "due process."  *See id*. at 11 (citing Docket Item 5 at 82 ("Claimant failed to attend [consultative] exam and due process was given."), *id.* at 92 (same), 94 ("We needed a [consultative exam] and claimant missed appointment. Due process was given."), 107 ("claimant failed to attend [consultative] exam and due process was given"), 109 ("We needed [a consultative exam] and claimant missed appointment. Due process was given."), 118 ("claimant failed to attend [consultative] exam and due process was given").  All those findings were made at least ten months before Richard's hearing, *id.* at 42, and the time to raise that issue therefore was then, not now.

In sum, Richard's attorney knew or certainly should have known that medical consultants who reviewed Richard's records found his claim deficient because he missed an examination and that he had been given "due process"—that is, adequate notice and an opportunity to attend.  But counsel did not solicit testimony regarding whether Richard had an explanation for missing his consultative examination, nor did counsel suggest that an exam was needed to complete the record.  *See id.* at 47-48 (counsel's suggesting that except for certain treatment records, the record was complete).  In light of all that, the ALJ did not err in crediting the consultants' conclusions that Richard had failed to attend his scheduled exam after he had been given adequate notice.  *See Jordan v. Comm'r of Soc. Sec.,* 142 F. App'x 542, 543 (2d Cir. 2005) (ALJ did not err in failing to develop the record where claimant's counsel

advised that she was seeking missing records,  ALJ kept administrative record open, but counsel never submitted the additional records and claimant never requested ALJ's assistance in obtaining records); *see also Malloy v. Comm'r of Soc. Sec.,* 2021 WL 2109130, at *2 (E.D.N.Y. May 25, 2021) ("Where a lawyer asserts that the record is complete, such statements are generally imputed to the claimant.") (citing *Zabala v. Astrue,* 595 F.3d 402, 408 (2d Cir. 2010) (absent "evidence that [counsel] was coerced or deceived into stipulating . . . the attorney's conduct is imputed to Petitioner").  And Richard's argument that the ALJ should have further developed the record and inquired about his reasons for missing the scheduled appointment therefore lacks merit.  *See Kevin P. v. Comm'r of Soc. Sec.,* 2020 WL 7231621, at *4 (W.D.N.Y. Dec. 18, 2020) (rejecting claimant's argument that remand is required because ALJ failed to inquire as to whether plaintiff had good reasons for failing to attend examinations where plaintiff never proffered any explanation at hearing or in submissions on appeal).

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Richard's motion for judgment on the pleadings, Docket Item 6-1, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 7-1, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:        September 5th, 2024
              Buffalo, New York

_Lawrence J. Vilardo_
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE